## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 19-01230-5-JNC |
| CAH ACQUISITION COMPANY #2, LLC, ) | |
| d/b/a OSWEGO COMMUNITY HOSPITAL, ) | Chapter 11 |
| ) | |
| **Debtor.** ) | |
| ) | |
| ) | |

### TRUSTEE'S MOTION FOR AUTHORITY TO ENTER INTO
### INSURANCE PREMIUM FINANCE AGREEMENT

**NOW COMES** Thomas W. Waldrep, Jr., trustee (the "Trustee") for CAH Acquisition Company #2, LLC d/b/a Oswego Community Hospital (the "Debtor"), by and through his undersigned counsel, and pursuant to Sections 364 and 1108 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves the Court for the entry of an Order, substantially in the form attached hereto as Exhibit A (the "Premium Finance Order"), authorizing the Trustee to enter into the Premium Finance Agreement (the "Agreement"), attached to the Premium Finance Order as Exhibit 1, by and between the Debtor and IPFS Corporation ("IPFS"). In support of this Motion, the Trustee respectfully states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The relief sought in this Motion is based upon Sections 364 and 1108 of the Bankruptcy Code and Rules 4001(c) and 9014 of the Bankruptcy Rules.

## FACTUAL BACKGROUND

*Procedural Background*

4. On March 17, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court.

5. On March 18, 2019, the Court entered an Order approving the appointment of the Trustee [Dkt. No. 4]. The Trustee is the duly appointed, qualified, and acting trustee of the Debtor's estate.

6. Prior to the Petition Date, the Debtor operated Oswego Community Hospital ("Oswego"), a for-profit, Critical Access Hospital in Oswego, Kansas. While in operation, Oswego provided acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, skilled nursing, and related outpatient ancillary services to residents in Oswego and in surrounding communities. Oswego was closed prior to the bankruptcy filing.

7. Upon information and belief, the Debtor is currently owned by HMC/CAH Consolidated, Inc. ("HMC") (20% interest) and Health Acquisition Company, LLC ("HAC," and together with HMC, the "Owners") (80% interest). Upon information and belief, the Owners are in the business of acquiring and operating a system of acute care hospitals located in rural communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals. Upon information and belief, the Owners own and/or operate rural hospitals in several states, including Kansas, North Carolina, Missouri, Tennessee, and Oklahoma.

8. Since his appointment on March 18, 2019, the Trustee has administered the estate of the Debtor and seven affiliated debtors in bankruptcy cases currently pending before this Court (collectively, the "Affiliated Debtors"). See *Order Directing Joint Administration of Chapter 11 Cases* [Case No. 19-00730, Dkt. No. 75].

9. On October 17, 2019, the Trustee filed a Chapter 11 plan proposing the orderly liquidation by auction of substantially all assets of the Debtor's estate (the "Plan") [Dkt. No. 210].

10. On November 6, 2019, the Trustee filed a motion to, *inter alia*, establish bidding procedures for the sale referenced in the Plan as well as to sell substantially all assets of the Debtor free and clear of claims, interests, liens, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code (the "Sale Motion") [Dkt. No. 229].

### *Necessity of Insurance Premium Financing*

11. To preserve the Debtor's real and personal property prior to the sale described in the Plan and Sale Motion, the Trustee must obtain certain insurance policies on such assets. Insuring the Debtor's assets will protect the Debtor's creditors from any diminution of sale proceeds that might occur as a result of damage to such assets in, for example, a weather event.

12. Further, in the case of the Debtor's related entity, CAH Acquisition Company #6 d/b/a I-70 Community Hospital ("CAH 6"), Case No. 19-01300-5-JNC, the Trustee entered into a certain Settlement and Release Agreement by and between CAH 6, the Trustee, First Liberty Bank, and Brent King, in his capacity as receiver for CAH 6 (the "Settlement"). Paragraph 7.1 of the Settlement, attached to Docket No. 247 in Case No. 19-01300-5-JNC and approved by the Court in said case on August 30, 2019, requires the Trustee to obtain insurance on the real and personal property of CAH 6.

13. The Trustee has negotiated the attached Agreement with IPFS to finance insurance policy premiums for the real and personal property of CAH 6—as required by the Settlement—as well as the Debtor and another non-operating affiliated facility in bankruptcy before this Court, CAH Acquisition Company #3, LLC d/b/a Horton Community Hospital ("CAH 3"), Case No. 19-01180-5-JNC.

3

14. The Debtor, CAH 3, and CAH 6 are all similarly situated in that neither of the three facilities have operated post-petition, all three are subject to substantially-identical plans and sale motions, and all three possess real and personal property that would benefit from insurance coverage prior to the closings of any such sales. By obtaining insurance coverage on all three facilities simultaneously, the Trustee has been able to obtain coverage on each facility at a lower overall cost than if the Trustee had negotiated the policies separately. However, as the three facilities to be covered are not operating, the Trustee must finance the insurance premiums through the closings of the sales of the debtors' assets through the proposed Agreement.

## RELIEF REQUESTED

15. The Trustee requests entry of an Order:

    a. Authorizing the Trustee, on behalf of the Debtor, to enter into and perform under the Agreement, and to execute and deliver such documents and amendments to the Agreement that the Trustee and IPFS may deem reasonably necessary or desirable to carry out the Agreement;

    b. Authorizing the Trustee to grant, pursuant to Section 364(c) of the Bankruptcy Code and the terms of the Agreement, to IPFS a first priority security interest (the "Lien") in the Policies including (but only to the extent permitted by applicable law); (i) all money that is or may become due under the Agreement because of a loss under the Policies that reduces unearned premiums (subject to the interest of any applicable mortgagee or loss payee); (ii) any return of premiums or unearned premiums under the Policies; and (iii) any dividends that may become due the Debtors in connection with the Policies;

    c. Providing that, should the Debtor default under the terms of the Agreement, IPFS may, in accordance with the terms of the Agreement, and without further order of the Court, cancel the Policies listed in the Agreement or any amendment thereto and receive and apply the unearned or return premiums to the account of the Debtor;

    d. Providing that the full rights of IPFS pursuant to the Agreement and controlling state law be and the same hereby are fully preserved and protected and are and shall remain unimpaired by the pendency of this or any subsequent proceeding under the Bankruptcy Code or the conversion of the case to a case under Chapter 7 of the Bankruptcy Code;

4

e. Providing that, in the event that returned or unearned premiums or other amounts due under the Policies are insufficient to pay the total amount owing by the Debtor to IPFS, any remaining amount owing to IPFS, including reasonable attorneys' fees and costs, shall be an allowed claim in this case with priority as an administrative expense pursuant to Section 503(b)(1) of the Bankruptcy Code;

f. Providing that any monies due under the Agreement not otherwise satisfied through returned or unearned premiums or through payment of an allowed administrative claim filed by IPFS shall not be subject to discharge or release in this Chapter 11 proceeding or any corresponding Chapter 7 proceeding, notwithstanding any provision to the contrary set forth in any Chapter 11 Plan or Confirmation Order entered in the above captioned case;

g. Providing that, notwithstanding anything to the contrary contained in any Order approving secured financing in this case, the Lien granted to IPFS hereunder in connection with the Policies shall be senior to any security interests and/or liens granted to any other secured creditors in the Debtor's case;

h. Providing that, because IPFS has extended credit to the Debtor in good faith, the reversal or modification of this Order on appeal shall not affect the validity of the debt owed to IPFS or the priority of its liens, as provided in Section 364(e) of the Bankruptcy Code;

i. Authorizing the Trustee, on the Debtor's behalf, to enter into financing agreements in the future with IPFS without further court order under the following terms:

   A. Copies of the proposed financing agreement will be forwarded to counsel for the Debtor's senior secured lenders and Paul Nusbaum and Steve White; and

   B. Unless the Trustee receives notice in writing from the counsel for the Debtor's senior secured lenders and Paul Nusbaum and Steve White within five (5) business days of the receipt of the proposed financing agreement by such parties, the Debtor shall proceed to enter into said financing agreement; and

h. Providing that any future financing agreements entered into by the Trustee, on behalf of the Debtor, and IPFS, pursuant to the procedures outlined above, shall be subject to the requirements of the Order sought in this Motion.

**WHEREFORE**, the Trustee respectfully requests that the Court:

5

A. Enter the Premium Financing Order in the form attached hereto as <u>Exhibit A</u> after notice and hearing authorizing the Debtor to enter into the Agreement attached thereto as <u>Exhibit 1</u>; and

B. Grant such other and further relief as the Court may deem necessary and proper.

Respectfully submitted, this the 20th day of November, 2019.

**WALDREP LLP**

/s/ *James C. Lanik*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC Bar No. 30454)
Jennifer B. Lyday (NC Bar No. 39871)
Francisco T. Morales (NC Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and -**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
   rredwine@hendrenmalone.com
   bwaller@hendrenmalone.com

*Co-Counsel for the Trustee*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | **Case No. 19-01230-5-JNC** |
| CAH ACQUISITION COMPANY #2, LLC, ) | |
| d/b/a OSWEGO COMMUNITY HOSPITAL, ) | **Chapter 11** |
| ) | |
| **Debtor.** ) | |
| ) | |
| ) | |

**NOTICE OF TRUSTEE'S MOTION FOR AUTHORITY TO ENTER INTO
INSURANCE PREMIUM FINANCE AGREEMENT**

NOTICE IS HEREBY GIVEN of the **TRUSTEE'S MOTION FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT** (the "Motion") filed in the above captioned case; and,

FURTHER NOTICE IS HEREBY GIVEN that this Motion may be allowed provided no responses and request for a hearing is made by a party in interest in writing to the Clerk of this Court within **FOURTEEN (14) DAYS** from the date of this notice; and,

FURTHER NOTICE IS HEREBY GIVEN, that if a response and a request for a hearing is filed by a party in interest in writing within the time indicated, a hearing will be conducted on this Motion thereto at a date, time and place to be later set by the Court and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the Motion thereto ex parte without further notice.

DATED: November 20, 2019

                      **WALDREP LLP**

                      /s/ *James C. Lanik*
                      Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
                      James C. Lanik (NC State Bar No. 30454)
                      Jennifer B. Lyday (NC State Bar No. 39871)
                      Francisco T. Morales (NC State Bar No. 43079)
                      101 S. Stratford Road, Suite 210
                      Winston-Salem, NC 27104
                      Telephone: 336-717-1440
                      Telefax: 336-717-1340
                      Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: khendren@hendrenmalone.com
          rredwine@hendrenmalone.com

*Attorneys for the Trustee*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that copies of the foregoing **TRUSTEE'S MOTION FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT** have been served upon each of the parties listed below either electronically or via U.S. Mail First Class Mail.

### ELECTRONIC SERVICE VIA CM/ECF

To:

Rayford K. Adams, III on behalf of Debtors

Jason L. Hendren on behalf of Trustee Thomas W. Waldrep, Jr.

Rebecca F. Redwine on behalf of Trustee Thomas W. Waldrep, Jr.

Benjamin E.F.B. Waller on behalf of Trustee Thomas W. Waldrep, Jr.

James C. Lanik on behalf of Trustee Thomas W. Waldrep, Jr.

Jennifer B. Lyday on behalf of Trustee Thomas W. Waldrep, Jr.

Thomas W. Waldrep, Jr. on behalf of Trustee Thomas W. Waldrep, Jr.

Marjorie K. Lynch on behalf of Bankruptcy Administrator Marjorie K. Lynch

Kirstin E. Gardner on behalf of Bankruptcy Administrator Marjorie K. Lynch

John Paul H. Cournoyer on behalf of Creditor Sun Finance, Inc., Creditor Paul L. Nusbaum, Creditor Steven F. White, and Interested Party Rural Community Hospitals of America, LLC

### SERVICE VIA UNITED STATES FIRST CLASS MAIL

To:

IPFS Corporation
2777 Allen Parkway, Suite 550
Houston, TX 77019

USI Southwest Inc.
Agent for IPFS Corporation
9811 Katy Freeway, Suite 550
Houston, TX 77024

This the 20th day of November, 2019.

**WALDREP LLP**

/s/ *James C. Lanik*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC State Bar No. 39871)
Francisco T. Morales (NC State Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and -**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
          rredwine@hendrenmalone.com

*Attorneys for the Trustee*

# **<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 19-01230-5-JNC |
| CAH ACQUISITION COMPANY #2, LLC, ) | |
| d/b/a OSWEGO COMMUNITY HOSPITAL, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |

**ORDER AUTHORIZING AUTHORITY TO ENTER INTO PREMIUM FINANCING AGREEMENT**

Upon the *Trustee's Motion for Authority to Enter into Insurance Premium Financing Agreement* (the "Motion") filed by Thomas W. Waldrep, Jr., Trustee[1] for the above-captioned Debtor pursuant to Sections 364 and 1108 of the Bankruptcy Code and Bankruptcy Rules 4001(c) and 9014 and requesting authorization to enter into that certain Agreement, attached hereto as Exhibit 1, between the Debtor and IPFS to finance the payment of premiums paid upon the Debtor's insurance policies (the "Policies") named therein, and after due consideration of the evidence

---

[1] Terms not defined herein shall have the same meaning ascribed to them in the Motion.

1

presented, the record in this case, and the comments of parties wishing to be heard, it appears to the Court that allowing the use of Cash Collateral subject to the terms and conditions set forth below is reasonable and appropriate, in the best interests of the bankruptcy estate and all creditors, and should be approved, and for good and sufficient reasons appearing, it is hereby **ORDERED** that:

1. The Motion is GRANTED.

2. The Trustee, on behalf of the Debtor, is hereby authorized to enter into and to perform under the Agreement and to execute and deliver such documents and amendments to the Agreement that the Trustee and IPFS may deem reasonably necessary or desirable to carry out the Agreement.

3. Pursuant to Section 364(c) of the Bankruptcy Code and the terms of the Agreement, the Trustee is authorized to grant to IPFS a first priority security interest (the "Lien") in the Policies including (but only to the extent permitted by applicable law); (i) all money that is or may become due under the Agreement because of a loss under the Policies that reduces unearned premiums (subject to the interest of any applicable mortgagee or loss payee); (ii) any return of premiums or unearned premiums under the Policies; and (iii) any dividends that may become due the Debtors in connection with the Policies.

4. In the event that the Debtor defaults under the terms of the Agreement, IPFS, may, in accordance with the terms of the Agreement, and without further order of the court, cancel the Policies listed in the Agreement or any amendment thereto and receive and apply the unearned or return premiums to the account of the Debtor.

5. The full rights of IPFS pursuant to the Agreement and controlling state law be and the same hereby are fully preserved and protected and are and shall remain unimpaired by the

pendency of this or any subsequent proceeding under the Bankruptcy Code or the conversion of the case to a case under Chapter 7 of the Bankruptcy Code.

6. In the event that returned or unearned premiums or other amounts due under the Policies are insufficient to pay the total amount owing by the Debtor to IPFS, any remaining amount owing to IPFS, including reasonable attorneys' fees and costs, shall be an allowed claim in this case with priority as an administrative expense pursuant to Section 503(b)(1) of the Bankruptcy Code.

7. Any monies due under the Agreement not otherwise satisfied through returned or unearned premiums or through payment of an allowed administrative claim filed by IPFS shall not be subject to discharge or release in this Chapter 11 proceeding or any corresponding Chapter 7 proceeding, notwithstanding any provision to the contrary set forth in any Chapter 11 Plan or Confirmation Order entered in the above captioned case.

8. Notwithstanding anything to the contrary contained in any Order approving secured financing in this case, the Lien granted to IPFS hereunder in connection with the Policies shall be senior to any security interests and/or liens granted to any other secured creditors in the Debtor's case.

9. As IPFS has extended credit to the Debtor in good faith, the reversal or modification of this Order on appeal shall not affect the validity of the debt owed to IPFS or the priority of its liens, as provided in Section 364(e) of the Bankruptcy Code.

10. The Trustee, on behalf of the Debtor, is hereby authorized to enter into financing agreements in the future with IPFS without further court order under the following terms:

>    A. Copies of the proposed financing agreement will be forwarded to counsel for the Debtor's senior secured lenders and Paul Nusbaum and Steve White; and

    B. Unless the Trustee receives notice in writing from the counsel for the Debtor's senior secured lenders and Paul Nusbaum and Steve White within five (5) business days of the receipt of the proposed financing agreement by such parties, the Debtor shall proceed to enter into said financing agreement.

11. Any future financing agreements entered into by the Trustee, on behalf of the Debtor, and IPFS, pursuant to the procedure outlined above, will be subject to the same requirements of this Order

- END OF DOCUMENT -

# **EXHIBIT 1**

**2777 ALLEN PARKWAY**
**SUITE 550**
**HOUSTON, TX 77019**
**(877)687-9824 FAX: (832)308-7925**
**CUSTOMER SERVICE: (800)247-6129**

### PREMIUM FINANCE AGREEMENT — IPFS CORPORATION

| | | |
|---|---|---|
| **A** CASH PRICE (TOTAL PREMIUMS) — $81,972.03 | **AGENT** (Name & Place of business)<br>USI SOUTHWEST INC<br><br>9811 KATY FREEWAY SUITE 500<br><br>HOUSTON, TX 77024<br>(713)490-4600 FAX: (484)652-5122 | **INSURED** (Name & Residence or business)<br>Affinity Health Partners LLC<br>Tom Waldrep - Ch 11 Trustee<br>7920 Belt Line Rd Ste 215<br><br>Dallas, TX 75254-8155 |
| **B** CASH DOWN PAYMENT — $49,183.22 | | |
| **C** PRINCIPAL BALANCE (A MINUS B) — $32,788.81 | | |

Commercial

Account #: _____    **LOAN DISCLOSURE**    Quote Number: 10238460
Additional Policies Scheduled on Page 3

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate.<br>**7.290%** | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br>**$801.60** | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf.<br>**$32,788.81** | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled<br>**$33,590.41** |
|---|---|---|---|

**YOUR PAYMENT SCHEDULE WILL BE**

| Number Of Payments | Amount Of Payments | When Payments Are Due | Beginning: |
|---|---|---|---|
| 7 | $4,798.63 | MONTHLY | 10/30/2019 |

ITEMIZATION OF THE AMOUNT FINANCED: THE AMOUNT FINANCED IS FOR APPLICATION TO THE PREMIUMS SET FORTH IN THE SCHEDULE OF POLICIES UNLESS OTHERWISE NOTED.

**Security:** Refer to paragraph 1 below for a description of the collateral assigned to Lender to secure this loan.
**Late Charges:** A late charge will be imposed on any installment in default 10 days or more. This late charge will be 5.00% of the installment due.
**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge in accordance with Rule of 78's. See the terms below and on the next page for additional information about nonpayment, default and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| NHD909980 | 09/30/2019 | RSUI INDEMNITY CO<br>CRC INSURANCE SERVICES, INC.** | PROPERTY | 50.00% | 12 | 80,000.00 |
| | | | | | Broker Fee: | $0.00 |
| | | | | | TOTAL: | $81,972.03 |

The undersigned insured directs IPFS Corporation (herein, "Lender") to pay the premiums on the policies described on the Schedule of Policies. In consideration of such premium payments, subject to the provisions set forth herein, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, in each case as shown in the above Loan Disclosure. The named insured(s), on a joint and several basis if more than one, hereby agree to the following provisions set forth on pages 1 and 2 of this Agreement. **1. SECURITY**: To secure payment of all amounts due under this Agreement, insured assigns Lender a security interest in all right, title and interest to the scheduled policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any unearned premium under each such policy, (c) dividends which may become due insured in connection with any such policy and (d) interests arising under a state guarantee fund. **2. POWER OF ATTORNEY**: Insured irrevocably appoints its Lender attorney-in-fact with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to its Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this Agreement.

**NOTICE: A. Do not sign this agreement before you read it or if it contains any blank space. B. You are entitled to a completely filled in copy of this agreement. C. Under the law, you have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. D. Keep your copy of this agreement to protect your legal rights.**

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____  _____    _____  _____
Signature of Insured or Authorized Agent   DATE         Signature of Agent                            DATE

Insured and Lender further agree that: **3. POLICY EFFECTIVE DATES**: The finance charge begins to accrue from each policy effective date or the date on which Lender made payment to the insurer for the financed policy, whichever is earlier. **4. AGREEMENT EFFECTIVE DATE**: This Agreement shall be effective upon the earlier of (a) the date when written acceptance is mailed to the insured by Lender and (b) three working days following Lender's receipt of a properly signed and completed Agreement unless such Agreement has been returned by Lender to the agent/broker within such period. **5. DEFAULT AND DELINQUENT PAYMENTS**: If any of the following happens insured will be in default: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the insured makes in this Agreement; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the rights of Lender to exercise all of its rights hereunder or under applicable law in the event of any subsequent late payment. **6. CANCELLATION**: Lender may cancel the scheduled policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement or transfers any of the scheduled policies to a third party and the unpaid balance due to Lender shall be immediately due and payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender. **7. CANCELLATION CHARGES**: If cancellation occurs, the insured agrees to pay a finance charge on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation until the outstanding indebtedness is paid in full or until such other date as required by law. **8. INSUFFICIENT FUNDS (NSF) CHARGES**: If insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee of $30.00 or the maximum amount permitted by law. **9. MONEY RECEIVED AFTER CANCELLATION**: Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of any policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled to the money. In the event that Lender does request a reinstatement of the policy(ies) on behalf of the insured, such a request does not guarantee that coverage under the policy(ies) will be reinstated or continued. Only the insurance company has authority to reinstate the policy(ies). The insured agrees that Lender has no liability to the insured if the policy(ies) is not reinstated and Lender may charge a reinstatement fee where permitted up to the maximum amount allowed by law. **10. ASSIGNMENT**: The insured agrees not to assign this Agreement or any policy listed hereon or any interest therein (except for the interest of mortgagees or loss payees), without the written consent of Lender, and that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall inure to the benefit of Lender's successors and assigns (and any assignees thereof). **11. INSURANCE AGENT OR BROKER**: The insured agrees that the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). As and where permissible by law, Lender may compensate your agent/broker for assisting in arranging the financing of your insurance premiums. If you have any questions about this compensation you should contact your agent/broker. **12. FINANCING NOT A CONDITION**: The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance. **13. COLLECTION COSTS**: Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law if this Agreement is referred to an attorney or collection agency who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. (Not applicable in KY) **14. LIMITATION OF LIABILITY**: The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligence or willful misconduct (not applicable in KY). Insured recognizes and agrees that Lender is a lender only and not an insurance company and that in no event does Lender assume any liability as an insurer hereunder or otherwise. **15. CLASSIFICATION AND FORMATION OF AGREEMENT**: This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy. **16. REPRESENTATIONS AND WARRANTIES**: The insured represents that (a) the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, (c) all parties responsible for payment of the premium are named and have signed this Agreement, and (d) there is no term or provision in any of the scheduled policies that would require Lender to notify or get the consent of any third party to effect cancellation of any such policy. **17. ADDITIONAL PREMIUM FINANCING**: Insured authorizes Lender to make additional advances under this premium finance agreement at the request of either the Insured or the Insured's agent with the Insured's express authorization, and subject to the approval of Lender, for any additional premium on any policy listed in the Schedule of Policies due to changes in the insurable risk. If Lender consents to the request for an additional advance, Lender will send Insured a revised payment amount ("Revised Payment Amount"). Insured agrees to pay the Revised Payment Amount, which may include additional finance charges on the newly advanced amount, and acknowledges that Lender will maintain its security interest in the Policy with full authority to cancel all policies and receive all unearned premium if Insured fails to pay the Revised Payment Amount. **18. PRIVACY**: Our privacy policy may be found at https://www.ipfs.com/Privacy.aspx. **19. ENTIRE DOCUMENT / GOVERNING LAW**: This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. In the event that any provision of this Agreement is found to be illegal or unenforceable, it shall be deemed severed from the remaining provisions, which shall remain in full force and effect. The laws of the State of Texas will govern this Agreement. **20. AUTHORIZATION**: The insurance company(ies) and their agents, any intermediaries and the agent / broker named in this Agreement and their successors and assigns are hereby authorized and directed by insured to provide Lender with full and complete information regarding all financed insurance policy(ies), including without limitation the status and calculation of unearned premiums, and Lender is authorized and directed to provide such parties with full and complete information and documentation regarding the financing of such insurance policy(ies), including a copy of this Agreement and any related notices. **21. WAIVER OF SOVERIGN IMMUNITY**: The insured expressly waives any sovereign immunity available to the insured, and agrees to be subject to the laws as set forth in this Agreement (and the jurisdiction of federal and/or state courts) for all matters relating to the collection and enforcement of amounts owed under this Agreement and the security interest in the scheduled policies granted hereby.

**AGENT/BROKER REPRESENTATIONS**

The agent/broker executing this, and any future, agreements represents, warrants and agrees: (1) installment payments totaling $0.00 and all applicable down payment(s) have been received from the insured in immediately available funds, (2) the insured has received a copy of this Agreement; if the agent/broker has signed this Agreement on the insured's behalf, the insured has expressly authorized the agent/broker to sign this Agreement on its behalf or, if the insured has signed, to the best of the undersigned's knowledge and belief such signature is genuine, (3) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (4) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (5) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (6) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (7) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent/broker in preparing this Agreement, (8) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable), (9) to hold in trust for Lender or its assigns any payments made or credited to the insured through or to agent/broker directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender or its assigns upon demand to satisfy the outstanding indebtness of the insured, (10) all material information concerning the insured and the financed policies necessary for Lender to cancel such policies and receive the unearned premium has been disclosed to Lender, (11) no term or provision of any financed policy requires Lender to notify or get the consent of any third party to effect cancellation of such policy, and (12) to promptly notify Lender in writing if any information on this Agreement becomes inaccurate.

| AGENT<br>(Name & Place of business)<br>USI SOUTHWEST INC<br><br>9811 KATY FREEWAY SUITE 500<br><br>HOUSTON,TX 77024<br>(713)490-4600 FAX: (484)652-5122 | INSURED<br>(Name & Residence or business)<br>Affinity Health Partners LLC<br>Tom Waldrep - Ch 11 Trustee<br>7920 Belt Line Rd Ste 215<br><br>Dallas, TX 75254-8155 |
|---|---|

Account #: _____    **SCHEDULE OF POLICIES**    Quote Number: 10238460
                                            (continued)

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| PENDING | 09/30/2019 | EVANSTON INSURANCE CO<br>CRC INSURANCE SERVICES, INC.** | GENERAL LIABILITY | 25.00% | 12 | 1,621.00<br>Fee: 239.41<br>Tax: 111.62 |
|  |  |  |  | Broker Fee: |  | $0.00 |
|  |  |  |  | TOTAL: |  | $81,972.03 |